UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| United States of America, | Case No.: 20CR3419-TWR |
|---|---|
| Plaintiff, | **TENTATIVE ORDER** |
| v. | |
| Kevin Andre Barnes (1), | |
| Defendant. | |

## I.  INTRODUCTION

Pending before the Court is defendant Barnes' Motion for a Hearing Regarding Status of Counsel, filed on October 23, 2023, as ECF No. 194.  As set forth more fully below, an extensive hearing on defendant Barnes' request for self-representation was held on October 20, 2023.  The Court is unaware of any legal authority which requires it to re-conduct a *Faretta* hearing each time a request for self-representation is made by defendant Barnes.  Indeed, given the thoroughness of the October 20 *Faretta* hearing and the well-developed record as a whole in this matter, it appears highly unlikely that an additional hearing will prove helpful to the Court.  Nevertheless, the Court issues this tentative Order on defendant Barnes' self-representation request and sets this matter for a hearing on October 27, 2023.  Counsel for both parties will be expected to address their agreement or disagreement with this tentative Order at that hearing.

## II.     APPLICABLE LEGAL PRINCIPLES

The right to represent oneself, like the right to counsel is secured by the Constitution. *See Faretta v. California,* 422 U.S. 806, 814-15 (1975). "Forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id*. at 817. Further, the choice must be honored even when it is ultimately to the defendant's own detriment. *Id*. at 834.

However, the Ninth Circuit has made clear that before granting a defendant's request for self-representation, a district court must determine that the request is voluntary, knowing and intelligent: "A district court should not grant a defendant's request to waive representation of counsel and serve as his own counsel, without discussing with the defendant, in open court, whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation." *United States v. Harris*, 683 F.2d 322, 324 (9th Cir. 1982).

A criminal defendant's waiver of a right to counsel is voluntary, knowing and intelligent if the defendant is informed of ***and understands*** (a) the nature of the charges against him, (b) the possible penalties, and (c) the dangers and disadvantages of self-representation. *United States v. Neal*, 776 F.3d 645, 657-58 (9th Cir. 2015) (internal quotations omitted and emphasis added). In order to waive the right to counsel knowingly and intelligently, a criminal defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir. 1987) (internal quotations omitted). "A waiver of counsel cannot be knowing and intelligent unless the accused appreciates the possible consequences of mishandling these core functions and the lawyer's superior ability to perform them." *United States v. Kimmel*, 672 F.2d 720, 721 (9th Cir. 1982).

## III.     DISCUSSION

The Court conducted an extensive *Faretta* hearing with defendant Barnes on October 20, 2023. Throughout the hearing defendant Barnes either (1) refused to answer

the Court's *Faretta* questions, (2) stated affirmatively that he did not understand the charges against him, the penalties he faced upon conviction and the many dangers of self-representation, or (3) gave contradictory answers. A brief summary of what occurred during the October 20, 2023, hearing is appropriate and necessary.[1]

### A. Defendant Barnes' Appearance in Court

Defendant Barnes began the hearing by attempting to appear in court while standing in the courtroom gallery. When asked to enter the well of the courtroom and to use a microphone like all other litigants, defendant Barnes initially responded, "I'm not passing over your jurisdiction. I feel that this is your jurisdiction. I am not in your jurisdiction." The Court informed defendant Barnes that he must act like any other courtroom litigant and that he was required to step forward into the well and use a microphone. In response defendant Barnes accused the Court of trying to kidnap him "without my legal consent." Defendant Barnes then informed the Court that, "I do have a fee schedule that I'm pretty sure you already see, and my fee schedule is 5,000 a minute every time I pass you guys' threshold, or if you lock me up, because that would be kidnapping." Eventually defendant Barnes voluntarily entered the well of the courtroom.

### B. Defendant Barnes is Arraigned on the Second Superseding Indictment

When the Court attempted to arraign him on the Second Superseding Indictment, defendant Barnes refused to acknowledge his true name:

The Clerk: Kevin Andre Barnes, is that your true name?

Mr. Barnes: I'm here as the mitigator for Kevin Andre Barnes. Kevin Andre Barnes – excuse me for one second. I'm fixing myself. Okay. I'm – I am the beneficiary for Kevin Andre Barnes' estate, and, again, I'm here to mitigate.

---

[1] In drafting the summary below, the Court relied upon its notes from the hearing as well as a draft transcript of the hearing prepared by the official court reporter. Although citations to the draft transcript are not appropriate, the Court is confident that the quoted portion of the draft transcript accurately reflect what transpired during the hearing.

Subsequent attempts to have defendant Barnes to acknowledge his name were unsuccessful and elicited responses such as, "I'm here as the mitigator for Kevin Andre Barnes," or "I'm the beneficiary for Kevin Andre Barnes." At one point during the lengthy name-related colloquy, defendant Barnes volunteered, "Again I just stated that I am the beneficiary of Kevin Andre Barnes' estate. And you know what, this is what we're going to do. Since I am the beneficiary, I would like to appoint Todd Robertson [presumably the undersigned district court judge] – that is your name, right, your Honor, as my trustee." The Court proceeded to read the Second Superseding Indictment to defendant Barnes and then entered a not guilty plea to both charges on behalf of defendant Barnes.[2]

### C. The *Faretta* Colloquy

After arraigning defendant Barnes, the Court next conducted a *Faretta* hearing. The Court began the colloquy by informing defendant Barnes that he would be "required to follow the same rules of procedure and evidence as a lawyer" and that he would "get no special treatment from the Court." Despite the fact that the entire Second Superseding Indictment had just been read to him in open court, defendant Barnes responded, "I'm not asking for special treatment, sir. But what I am asking is to understand what's going on, because I need to know what my charges is."

#### 1. The nature of the charges

As noted above, defendant Barnes began the *Faretta* colloquy by stating that he did not understand the charges pending against him. After further explanation of the two charges – conspiracy to import methamphetamine and importation of methamphetamine – the Court asked defendant Barnes if he understood those two charges. Defendant Barnes responded, "Yeah. I guess, yeah." Later in the proceedings, the Court again stated, "Do

---

[2] In response to the Court entering a not guilty plea on his behalf, defendant Barnes stated, "if you enter a not-guilty plea or whatever you enter, you'll be held liable" (response to the Court entering a not guilty plea as to Count 1), and "if you enter a plea on my behalf, you will be held liable" (response to the Court entering a not guilty plea as to Count 2).

you understand that you're charged with two crimes?" Defendant Barnes replied, "Yes. You said two charges." However, shortly thereafter defendant Barnes made a remark which indicated he may not understand the pending charges: "Got it. Got it, yeah. If I'm convicted for one crime, again, I'm charged for another crime and I'm convicted for that crime, you're charged with both." Sensing confusion on defendant Barnes' part, the Court reiterated, "You're charged with two crimes right now" and defendant Barnes responded, "Yeah." The Court concludes that defendant Barnes adequately understands the nature of the charges against him.

### 2. The possible penalties

The Court also addressed the possible maximum penalties defendant Barnes would face if convicted of the two pending charges. Defendant Barnes stated he understood the maximum penalties for each of the two crimes, but repeatedly indicated he did not understand the concept of consecutive sentences for those offenses:

> The Court: Do you understand that if you are found guilty of both of those crimes, I could order that the sentences be served consecutively, that is, one after the other? Do you understand that, sir?
>
> Mr. Barnes: I don't know what that means, one after the other.

Despite repeated attempts to explain the concept of consecutive sentences, defendant Barnes maintained his initial response that he simply did not understand the concept. For example, the following exchange occurred:

> The Court: So if you are convicted on Count 1 and I sentenced you to ten years, and you were convicted on Court 2 and I sentenced you to ten years, I could order that they be run consecutive to one another, so you would serve a total of 20 years. That's what consecutive means, is that you would serve one sentence. When you were done with the first sentence, then you would then serve the second sentence after that. Do you understand that consecutive idea?
>
> Mr. Barnes: No. I really don't.

After further explanation, defendant Barnes finally acknowledged that he understood he was facing a maximum prison sentence of 40 years (i.e., two consecutive 20-year statutory maximum sentences for each of the two charges). Thus, the Court concludes that defendant Barnes adequately understands the maximum penalties he faces if convicted of the pending charges.

### 3. The dangers and disadvantages of self-representation

The Court had a lengthy discussion with defendant Barnes about the dangers and disadvantages of self-representation. He acknowledged having no familiarity with the Sentencing Guidelines, the Federal Rules of Evidence, or the Federal Rules of Criminal Procedure. Despite repeated inquiries from the Court, defendant Barnes refused to acknowledge that he understood the many dangers of self-representation:

> The Court: So some of this we've already covered. And do you understand that if you represent yourself, you are on your own. I cannot tell you or advise you how to try your case. Do you understand that? You are on your own. So if you stand up and you say something that's not permitted, I'm going to say, Mr. Barnes, sit down, and I'm not going to explain to you why. I'm not going to tell you how to get around that problem. You're on your own. Do you understand that, sir?
>
> Mr. Barnes: Well, I'm not privy to answer that question right now, sir.

Despite six transcript pages of a follow-up exchange between the Court and defendant Barnes regarding his need to confirm that he understood the concept of being "on his own" as a self-represented defendant, he refused to make that acknowledgement. Additionally, he affirmatively stated that he did not understand that he would be expected to abide by the Federal Rules of Evidence and/or the Federal Rules of Criminal Procedure:

> The Court: Are you familiar with the Federal Rules of Evidence?
>
> Mr. Barnes: No, I'm not familiar with the Federal Rules of Evidence.
>
> The Court: Do you understand that the Federal Rules of Evidence will govern what evidence may be introduced at trial, and that if you choose to represent yourself, you

must abide by these technical rules and they will not be relaxed for your benefit? Do you understand that?

<u>Mr. Barnes</u>: No. I don't understand that, sir.

<u>The Court</u>: So there are rules, such as what may be received in evidence. There are rules against the admission of hearsay. There are rules that pertain to the authentication of exhibits. You will be held to abide by all of those rules if you represent yourself. Do you understand that?

<u>Mr. Barnes</u>: No, I don't understand that. . . .

***

<u>The Court</u>: Mr. Barnes, are you familiar with the Federal Rules of Criminal Procedure?

<u>Mr. Barnes</u>: I am not.

<u>The Court</u>: Do you understand that those rules govern the way in which a criminal action is tried in federal court, and that you will be bound by those rules and they will not be relaxed for your benefit if you choose to represent yourself?

<u>Mr. Barnes</u>: I do not know what that means, sir.

<u>The Court</u>: It means that you are going to have to abide by the Federal Rules of Criminal Procedure if you choose to represent yourself. You will be held to the same standard as a practicing attorney if you choose to represent yourself. Do you understand that?

<u>Mr. Barnes</u>: I don't understand, sir. I don't – my mind is clouded right now because you're showing me that you're not even being neutral right now.

<u>The Court</u>: Mr. Barnes, all I'm asking you are the questions I need to ask you to determine whether or not you are knowingly and voluntarily waiving your right to counsel.

<u>Mr. Barnes</u>: I don't understand what you're saying. I'm trying to understand what you're saying. Again, I don't understand legalese and legal, being attorneys. . . .

Significantly, given his refusal to respond to many of the Court's questions, the Court had to ask defendant Barnes no less than 18 times if he wished to represent himself in this matter. For example, the *Faretta* colloquy began with this exchange:

> The Court:  However, before we begin, I note that several of your submissions, Mr. Barnes, indicate that you have a lack of understanding of what you call "legalese" and your inability to comprehend these proceedings. I would like to make sure you understand, Mr. Barnes, that your lack of familiarity with the law and the legal process is not a defense to the charges in this case. When you represent yourself, Mr. Barnes, you are required to follow the same rules of procedure and evidence as a lawyer, and you will get no special treatment from the Court.
>
> Mr. Barnes:  I'm not asking for special treatment, sir. But what I'm asking is to understand what's going on, because I need to know what my charges is.
>
> The Court:  Sure. We're going to go through that, Mr. Barnes. The Court has appointed Mr. Rexrode as your standby counsel to assist you, but your lack of legal understanding is not a defense and will place you at a great disadvantage. Therefore, I would like to make sure, as Judge Sammartino did, that it is still your desire to represent yourself in this case. Is that still your desire, Mr. Barnes?
>
> Mr. Barnes:  Do I have permission to speak now, sir?
>
> The Court:  No. You have permission to answer my questions, and then we can have a discussion after I go through all of my questions. So do you wish to represent yourself?
>
> Mr. Barnes:  Do I have permission to speak, sir?
>
> The Court:  Yes, you may answer "yes" or "no."
>
> Mr. Barnes:  You said yes, So since I have permission to speak –
>
> The Court:  Mr. Barnes, I asked you a question.
>
> Mr. Barnes:  Can I ask you a question? Do I have permission to speak?
>
> The Court:  You have permission to answer my question.

> Mr. Barnes: Okay. So since I have permission to speak, on the record, I just appointed under power of appointment, you are all the trustees. So now I'm going to ask who is the trustee in this case, my honor.

Despite that somewhat bizarre non-answer, the Court continued to ask defendant Barnes multiple times if it was his desire to represent himself. Defendant Barnes repeatedly either refused to answer or acknowledge the question, and at one point began to direct his remarks to the court reporter and courtroom deputy. Pressing forward, the Court once again inquired of defendant Barnes:

> The Court: The question to you Mr. Barnes is: Is it still your desire to represent yourself in this case? Yes or no?
>
> Mr. Barnes: Sir, do I have permission to speak?
>
> The Court: You have permission to answer my question. Is it your desire to represent yourself?
>
> Mr. Barnes: I don't understand the question.
>
> The Court: Do you wish to act as your own attorney in this case, or do you wish to be represented by the attorney appointed to assist you in this matter, Mr. Rexrode? What Is your preference?
>
> Mr. Barnes: I don't understand. So I don't understand.
>
> The Court: Well, if you don't understand your ability to represent yourself, and you don't understand that an attorney has been appointed to represent you, I cannot possibly find on the record that you have made a knowing and intelligent decision to represent yourself.

Shortly after making that determination, defendant Barnes declared, "I'm representing myself." The Court immediately conducted a follow-up:

> The Court: Okay. Mr. Barnes, I would like to make sure that it is still your desire to represent yourself in this case. Is it?
>
> Mr. Barnes: I am the beneficiary for Kevin Andre Barnes, again –

1  <u>The Court</u>:  Mr. Barnes, you have to tell me one way or the other if you want to represent yourself in this case.  Do you wish to represent yourself?

<u>Mr. Barnes</u>:  Again, do I have permission to speak?

<u>The Court</u>:  You have permission to answer my question.  Do you wish to represent yourself?

<u>Mr. Barnes</u>:  Agan, do I have permission to speak?

<u>The Court</u>:  Only to answer the question that I have asked of you.

<u>Mr. Barnes</u>:  Okay.  On the record, I would like to note who is the trustee in this case --

The record before the Court compels the conclusion that defendant Barnes has failed to adequately assert a choice of self-representation.[3]  Nevertheless, even if the Court were to assume that defendant Barnes has appropriately asserted his right to self-representation, the record confirms that defendant Barnes does not sufficiently understand the dangers and disadvantages of self-representation.  Thus, to the extent that defendant Barnes asserts that he wishes to waive his right to counsel and represent himself in this matter, the Court must conclude that any such waiver is not knowingly and intelligently made.

**D. Competency and Self-Representation**

A review of the record reveals that prior to transferring this matter to the undersigned for trial, Judge Sammartino found defendant Barnes competent to stand trial.  While it is clear to the Court that defendant Barnes is competent to stand trial under *Dusky v. United States*, 362 U.S. 402 (1960), his conduct in this case merits separate analysis under *United States v. Thompson*, 587 F.3d 1165 (9th Cir. 2009) regarding his mental competence for self-representation.

The content of defendant Barnes' pleadings and his conduct during court proceedings can be fairly characterized as bizarre.  For example, his pleading filed as ECF

---

[3]  Approximately an hour and a-half into the *Faretta* colloquy defendant Barnes stated, "I'm not giving up my rights by no lawyer."

10

No. 108 and titled "Demand for Bill of Particulars Nature and Cause of Action Not a Discovery Motion" demonstrates that defendant Barnes is not mentally fit to handle a defense to the charges in this case. Indeed, the pleading is replete with rambling, nonsensical and irrelevant questions and assertions, none of which would be arguably relevant to a defense at trial. Similarly, defendant Barnes has filed as ECF No. 101 a purported "Fee Schedule," which sets forth payments defendant Barnes apparently believes he is entitled to for various "violations" such as "violation of right to travel in private capacity." Also, in an apparent response to Judge Sammartino's order directing him to submit to a competency hearing, defendant Barnes filed as ECF No. 132 a pleading captioned "Rebuttable Presumption of Death by Affidavit." The foregoing are only some examples of the nonsensical pleadings filed by defendant Barnes, all of which indicate his lack of mental fitness to pursue a defense in this case without the assistance of counsel.

Moreover, defendant Barnes' conduct during the October 20, 2023, hearing further demonstrates he is mentally unfit to assume the role of self-representation. Some of his inappropriate statements and behavior are noted above. For example, in response to the Court's inquiry regarding his desire to represent himself in this matter he responded nonsensically, "On the record, I would like to note who is the trustee in this case." Defendant Barnes also refused to acknowledge his name and at one point named the undersigned as his "trustee." Additionally, about an hour and a-half into the *Faretta* hearing, and despite having been repeatedly advised of what the hearing was intended to accomplish, defendant Barnes indicated he did not comprehend the basic nature of the proceedings: "I need to know where we are. Are we in trial? Is this considered trial? Is this considered motion hearing? Is this considered – like I don't even know where we're at right now."

Given defendant Barnes well-established pattern of addressing matters in this case with bizarre, nonsensical and irrelevant statements and pleadings the Court concludes that he lacks the mental capacity to conduct trial proceedings. *See United States v. Thomson*, 587 F.3d at 1173 ("Indeed, the district court did exactly what *Edwards* and *Ferguson*

instruct; that is, it determined whether [defendant] Thompson lacked the mental capacity to conduct trial proceedings.").[4]

### IV. CONCLUSION

Defendant Barnes' request to represent himself in this matter is DENIED.

**IT IS SO ORDERED.**

DATED: 10/26/2023

Hon. Todd W. Robinson
U.S. District Court Judge

---

[4] To be clear, the Court is not simply making a finding that defendant Barnes would not do a good job defending himself in this case. Such a simplistic conclusion would run afoul of *Faretta*. Here, the fundamental issue is the fairness of the proceedings and the Court's obligation to "take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Indiana v. Edwards*, 554 U.S. 164, 178-79 (2008). The record in this matter compels the conclusion that defendant Barnes lacks the mental capacity to conduct his own defense.